## NATHAN D. ABBOTT *vs.* JOHN SHEPARD & others.

Suffolk.   March 26. — May 10, 1886.   W. ALLEN & HOLMES, JJ., absent.

In an action, by the assignee in insolvency of the estate of A., to recover the amount of certain promissory notes, alleged to have been transferred by A. to the defendant, in violation of the provisions of the insolvent law, it appeared that, about two months before the proceedings in insolvency were begun, A. sold his business to a third person, and, of the amount received therefor, transferred the greater part to the defendant, to whom A. was largely indebted. The plaintiff introduced evidence tending to show that A. had been connected in business with D.; that this firm failed in the previous year, and compromised with its creditors, including the defendant, for forty cents on the dollar; that A. began business again, and continued it until he sold out as above stated; that the defendant examined into the assets and liabilities of A. soon after he so started in business again, and ascertained his condition; and that A. was insolvent from the time of the failure of the firm of A. and D. until the proceedings in insolvency were begun against him. The defendant introduced evidence tending to show that A. was solvent when he began business again, and at the time of said transfer to the defendant; and that he had no reason to believe that A. was insolvent. The judge instructed the jury that the plaintiff must prove three things : first, that, at the time of the payment or transfer in question, A. was insolvent, or in contemplation of insolvency ; secondly, that the payment or transfer in question was made with a view to give a preference to the defendant over other creditors ; thirdly, that, at the time of the payment or transfer in question, the defendant had reasonable cause to believe that A. was then insolvent, or in contemplation of insolvency ; and that, if those three propositions were established, then the verdict must be for the plaintiff. The defendant then requested the judge to instruct the jury that the plaintiff must also satisfy them that the defendant had reasonable cause to believe that the transfer of the notes was made in fraud of the laws relating to insolvency. This instruction the judge gave, but with the further instruction, that, if they found affirmatively established the three propositions before stated, that would authorize the finding that the transfer was in fraud of the insolvent law. *Held*, that the defendant had no ground of exception.

In an action, by the assignee in insolvency of the estate of A., to recover the amount of certain promissory notes alleged to have been transferred by A. to the defendant, in violation of the provisions of the insolvent law, the plaintiff introduced evidence tending to show that A. was at one time connected in business with D.; that the firm failed, and compromised with its creditors, of whom the defendant was one, by paying forty cents on the dollar; that A. began business again, and continued it for some time, when he sold out for a certain sum, the notes given for the greater part of which were transferred to the defendant, to whom he was largely indebted; and that A. was insolvent from the time of the failure of the firm of A. and D. until the date of the insolvency proceedings against him. The defendant called a witness, who testified that he was in the defendant's employ, and had charge of his accounts; and that, at about the time that A. and D. failed, he went to their place of business to look after their debt to the defendant. The defendant then asked him, "Do you

know whether there was any difficulty between D. and A. about that time that led to the failure ? " *Held*, that the judge was justified, in his discretion, in excluding the question.

CONTRACT, with counts in tort, by the assignee in insolvency of the estate of Charles H. Abbott, to recover the amount of certain promissory notes, alleged to have been transferred to the defendants, in violation of the provisions of the insolvent law. Trial in the Superior Court, before *Mason*, J., who allowed a bill of exceptions, in substance as follows :

It appeared that Charles H. Abbott was for some years engaged in the retail dry-goods business in Lowell; that about October 1, 1882, he sold his entire stock and fixtures to one Sharp, and received payment therefor as follows : $1500 by check on October 3 ; $9500 in two promissory notes of said Sharp, on October 25, 1882, for $4500 and $5000 respectively; and a check for $1366.10, on November 2, 1882; that said two notes were indorsed by Abbott to the defendants on October 25, 1882, upon the understanding that they should give him back a part of the amount thereof ; and that, on or about November 3, they gave him a check for $925.71. At the time of the transfer of these notes to the defendants, Abbott owed them about $9540.

Subsequently, proceedings in insolvency were begun against Abbott, on November 27, 1882, in which the plaintiff was appointed assignee of his estate.

The plaintiff introduced evidence tending to prove that Abbott, prior to 1881, was connected in business with one Dickinson, under the style of Abbott and Dickinson; that said firm failed early in the year 1881, and compromised with most of its creditors for forty cents on the dollar ; that Abbott began business again in May, 1881, under the name of C. H. Abbott and Company, and continued to do business under that name until he sold out, in October, 1882; that the defendants were creditors of Abbott and Dickinson at the time of their failure in 1881, and settled with them for forty cents on the dollar, and gave them a release ; that the defendants examined into the assets and liabilities of C. H. Abbott and Company soon after he started again in May, 1881, and ascertained his condition; and that he was insolvent from the time of the failure of Abbott

and Dickinson down to the date of the insolvency proceedings against him.

The defendants introduced evidence tending to prove that Abbott was solvent when he began business under the name of C. H. Abbott and Company, and at the time of the transfer of the notes to the defendants, for which the plaintiff sought to recover. They called, as a witness, Franklin A. Webster, who testified that he had been in their employ for a number of years, and had had charge of their accounts and credits; that he had known Abbott about twenty years; that, since he had been connected with the defendants, they had sold goods to Abbott and the different firms with which he had been connected, including Abbott and Dickinson, and C. H. Abbott and Company; that most of the information which the defendants had of their debtors came through him; that neither he nor the defendants had any reason to believe that Abbott was insolvent; that, at about the time that Abbott and Dickinson failed, he went to Lowell to look after their debt to the defendants. The defendants asked him the following question, which was excluded: "Do you know whether there was any difficulty between Dickinson and Abbott about that time that led to the failure?"

It was in evidence that the defendants' sales to C. H. Abbott and Company were under an agreement to give him credit for a large stock, and to give him extra time thereon, interest to be paid on the account after thirty days.

The judge instructed the jury, that the plaintiff must prove three things: first, that, at the time of the payment or transfer in question, Abbott was insolvent, or in contemplation of insolvency; secondly, that the payment or transfer in question was made with a view to give a preference to the defendants over other creditors; thirdly, that, at the time of the payment or transfer in question, the defendants had reasonable cause to believe that Abbott was then insolvent, or in contemplation of insolvency; and that, if these three propositions were established, then the verdict must be for the plaintiff.

The defendants then requested the judge to instruct the jury that the plaintiff must also satisfy them that the defendants had reasonable cause to believe that the transfer of the notes was made in fraud of the laws relating to insolvency. This

instruction the judge gave, but with the further instruction that, if they found affirmatively established the three propositions before stated, that would authorize the finding that the transfer was in fraud of the insolvent law.

The jury returned a verdict for the plaintiff in the sum of $9937.59 ; and the defendants alleged exceptions.

*R. Stone*, for the defendants.

*R. D. Smith & M. R. Thomas*, for the plaintiff.

GARDNER, J. 1. The three several propositions stated by the judge in his charge to the jury were in accordance with the law relating to preferences under the insolvent act. Pub. Sts. *c.* 157, § 96. The presiding judge then added, that, if the jury found the first, second, and third propositions affirmatively established, "that would authorize the finding that the transfer was in fraud of the insolvent law ; " in other words, would authorize the finding that the defendants had reasonable cause to believe that the transfer of the notes was made in fraud of the law relating to insolvency. The defendants object to this addition.

The bankrupt act of the United States had a similar provision in relation to preferences. U. S. St. March 2, 1867, § 35. Under this statute, it has been held that the words, that the creditor must have reasonable cause to believe that the transfer was made in fraud of the provisions of the bankrupt act, refer to reasonable cause to believe that the debtor intended a fraudulent preference. *Forbes* v. *Howe*, 102 Mass. 427. *Toof* v. *Martin*, 13 Wall. 40, 51.

If the defendants knew, or had reasonable ground to believe, that Abbott was insolvent, and if, with that knowledge, they took a large portion of his property to secure themselves, and if, at the same time, they knew that the law required that his property should be equally divided among his creditors, these facts would go far towards supporting the inference, that the defendants had reasonable cause to believe that Abbott intended that the transfer of these notes to them should be a fraudulent preference. *Forbes* v. *Howe, ubi supra.* This would follow as a necessary result from the facts stated. Upon the evidence in this case, if the three propositions stated to the jury were properly established, the jury had the right to infer therefrom that the defendants had reasonable cause to believe that Abbott intended

the transfer of the notes as a preference.    Under the circumstances of this case, and upon the evidence reported, we think that the instructions given to the jury were correct.    *Toof* v. *Martin, ubi supra.*    It is possible to imagine cases where the facts might require further instructions, and where the jury would not be justified in drawing such inferences as in the case at bar.

2. The defendants offered evidence tending to show that a difficulty between Dickinson and Abbott led to their failure in 1881.    The plaintiff had shown the failure of Abbott in 1881; and the defendants contended that the evidence excluded tended to show that the failure was not due to bad management of his business.    We think that this testimony comes within the range of cases so near the line of remoteness and immateriality, that it is wiser to leave it to the discretionary control of the presiding judge, than to attempt to pass upon it as a question of law.    It was, however, so remote that the judge was fully justified in excluding it.    *Exceptions overruled.*